## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

DALTON DONOVAN MILLER,
A # 043-721-663

                Petitioner,

    v.

JEH CHARLES JOHNSON, Warden,

                Respondent.

CIVIL ACTION NO. 3:14-CV-02263

(CAPUTO, J.)
(MEHALCHICK, M.J.)

### REPORT AND RECOMMENDATION

On November 26, 2014, the Court received and filed a petition for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2241, signed and dated by the Petitioner, Jamaican native Dalton Donovan Miller, on November 24, 2014.[1] (Doc. 1). At the time he filed the instant federal habeas petition, Miller was in the custody of U.S. Immigration and Customs Enforcement ("ICE") at York County Prison. (Doc. 1, at 2). Miller since has been transferred to the Pike County Correctional Facility. (Doc. 11). Accordingly, the proper respondent to this petition is now Craig A. Lowe, Warden of Pike County Correctional Facility.

### I.  BACKGROUND AND PROCEDURAL HISTORY

Miller is a citizen and native of Jamaica and was first admitted to the United States as a conditional resident on or about October 5, 1992. (Doc. 5-1, at 4). On April 4, 2001, Miller was granted lawful permanent resident status. (Doc. 5-1, at 4). On August 1, 2003, Miller was adjudged guilty in the Superior Court of Delaware of three counts of felony theft in excess of

---

[1] A second habeas petition filed by Miller on November 20, 2015, *Miller v. Sabol*, Case No. 3:15- CV-02229, was consolidated into this action on June 22, 2016. (Doc. 12). Because the parties filed several docket entries in Miller's second habeas petition before the two petitions were consolidated, this Court frequently cites to the record of both petitions.

$1,000. (Doc. 5-1, at 12-15). Miller received a two-year suspended prison sentence on each of the three felony theft counts.[2] (Doc. 5-1, at 14-15).

On August 18, 2014, Miller was taken into ICE custody and issued a Notice to Appear before a United States Department of Justice immigration judge. (Doc. 1, at 7; Doc. 5-1, at 6-7). In a decision filed on September 17, 2014, an immigration judge found that Miller was removable from the United States and ordered him to be removed to Jamaica upon determining that Miller committed an aggravated felony within the meaning of 8 U.S.C. § 1227(a)(2)(A)(iii). (Doc. 5-1, at 19-26). Miller subsequently appealed the immigration judge's decision to the Board of Immigration Appeals ("BIA") on October 13, 2014. (Doc. 1, at 5; Doc. 5-1, at 27). The BIA affirmed the immigration judge's finding that Miller had committed an aggravated felony in its January 12, 2015 decision, but remanded the case back to the immigration court due to concerns that Miller had not been notified of other forms of relief that might be available to him. (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 13-1, at 28-30). After several delays, which Respondent argues were entirely attributable to Miller, another immigration judge denied Miller's new claims for relief and once again ordered him to be removed to Jamaica on December 7, 2015. (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 13, at 15-16; Doc. 13-1, at 19-24). Miller filed a timely appeal to the BIA on January 4, 2016. (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 13, at 15). As of the Miller's most recent filing in late May of 2016,

---

[2] Miller notes that he did not serve any jail time on his suspended sentences (Doc. 1, at 7, 15), but the fact that his sentence was suspended is irrelevant to Miller's removability. *See* 8 U.S.C. § 1101(a)(48)(B) ("Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part.").

Miller's appeal before the BIA remained pending. (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 18).

On November 26, 2014, while Miller's first appeal to the BIA was still pending, Miller filed his first petition for writ of habeas corpus in federal court. (Doc. 1). This Court issued an order on December 8, 2014, for Respondent to show cause why relief should not be granted. (Doc. 4). On December 23, 2014, Respondent filed a response. (Doc. 5). On May 1, 2015, Miller filed a traverse. (Doc. 7). Accordingly, this matter is now ripe for disposition.

## II.  DISCUSSION

Miller appears to challenge his detention by immigration officials on two grounds: (1) that he has wrongfully been subjected to mandatory detention under 8 U.S.C. § 1226(c)(1)(B); and (2) that, even if mandatory detention is proper, his continued detention without an individualized bond hearing violates constitutional due process protections. (Doc. 1, at 7; Doc. 7). Pre-removal detention is authorized under 8 U.S.C. § 1226. Section 1226(c)(1) provides that "[t]he Attorney General *shall* take into custody any alien who . . . (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." (emphasis added). Respondent contends that Miller is subject to mandatory detention pursuant to § 1227(a)(2)(A)(iii), which provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable," and that Miller's due process rights have not been violated because any delay in immigration proceedings was caused by Miller's own conduct. (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 13, at 15).

The Court will examine each of these arguments in turn.

A. THIS COURT LACKS JURISDICTION TO DETERMINE WHETHER MILLER IS AN AGGRAVATED FELON PURSUANT TO § 1226(C)

Miller first appears to argue that he is not subject to mandatory detention whatsoever because he did not commit an aggravated felony as defined in 8 U.S.C. § 1227(a)(2)(A)(iii). (Doc. 7, at 5-7). The Court will not entertain Miller's argument on the merits because it lacks jurisdiction to review this aspect of Miller's habeas petition. The Real ID Act of 2005, Pub.L. No. 109–13, 119 Stat. 231, codified at 8 U.S.C. § 1252, eliminates district courts' habeas corpus jurisdiction to review orders of removal. *Jordon v. Attorney Gen. of U.S.*, 424 F.3d 320, 326 (3d Cir. 2005). Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available **only in judicial review of a final order** under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (emphasis added).

The Act, however, "w[as] not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'" *Nnadika v. Attorney Gen. of U.S.*, 484 F.3d 626, 632 (3d Cir. 2007) (quoting H.R. Rep. No. 109-72, at 175 (2005), *reprinted in* 2005 U.S.C.C.A.N. 240, 300). Accordingly, the Court must determine whether Miller's petition challenges his administrative removal order.

Here, an immigration judge initially ordered Miller removed to Jamaica on September 17, 2014, upon concluding that Miller's 2003 felony theft conviction before the Superior Court of Delaware constituted an aggravated felony. (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 13-1, at 19-24); 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated

4

felony at any time after admission is deportable."). On appeal, the BIA affirmed the immigration judge's finding that Miller had committed an aggravated felony, but nonetheless remanded the case back to the immigration judge to advise Miller of his rights to seek withholding of removal and protection under the Convention Against Torture ("CAT"). (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 13-1, at 29-30 (citing 8 C.F.R. § 1240.11(c)(1)). On December 7, 2015, another immigration judge denied Miller's withholding of removal and CAT claims and again ordered him removed to Jamaica. (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 13-1, at 32–36). Miller filed a timely appeal of the removal order to the BIA, which remains pending as of the parties' most recent briefing (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 13, at 15).

In order to grant Miller relief from mandatory detention on the basis that he has not committed an aggravated felony, this Court would necessarily have to reach conclusions of law and fact that are inconsistent with those made by the immigration judge in ordering Miller removed. "[T]he way that [ICE] applied immigration law . . . is exactly the type of analysis the Real ID Act forbids the district courts from undertaking." *Shafer v. Bureau of Immigration & Customs Enf't*, No. 3:07CV264, 2007 WL 1217692, at \*2 (M.D. Pa. Apr. 24, 2007); *see also Soriano v. Sabol*, No. CV 3:16-0271, 2016 WL 2347904, at \*6 (M.D. Pa. May 3, 2016) ("[I]t is not this court's job to conduct the categorical approach and determine whether the petitioner is entitled to discretionary relief from removal . . . ."). Because this ground for review of Miller's mandatory detention status challenges the very basis for his deportability, the Court lacks jurisdiction to assess whether Miller's Delaware conviction constitutes an aggravated felony.[3]

---

[3] The Real ID Act also provides that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of

B.  MILLER IS ENTITLED TO AN INDIVIDUALIZED BOND HEARING

Miller also challenges the constitutionality of his prolonged detention without a bond hearing prior to the entry of a final order of removal. (Doc. 7, at 7-10). As noted above, Respondent contends that Miller's Delaware theft conviction gives rise to the mandatory detention provisions of 8 U.S.C. § 1226(c)(1)(B). Section 1226(c) mandates detention during immigration proceedings of aliens who are removable based on certain enumerated offenses, including aggravated felonies. Recent decisions rendered by the United States Court of Appeals for the Third Circuit have defined the contours of the constitutional protection against excessive prolonged detention pending removal proceedings. *See Chavez-Alvarez v. Warden York Ctny. Prison*, 783 F.3d 469, 475 (3d Cir. 2015); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011). In *Chavez-Alvarez v. Warden York County Prison*, the Third Circuit explained that mandatory detention pursuant to § 1226(c) does not *ipso facto* violate due process:

> Before 1996, significant numbers of aliens convicted of serious crimes were taking advantage of their release on bond as an opportunity to flee, avoid removal, and commit more crimes. *Demore v. Kim,* 538 U.S. 510, 518–19, (2003). Congress fixed this problem by enacting section 1226(c), expanding the range of serious crimes for which the Government was required to detain convicted aliens. Notably, section 1226(c) does not give the Attorney General any authority to release these aliens on bond. *Id.* at 521.
> . . .
> The Supreme Court left no doubt that the Government's authority under section 1226(c) to detain aliens without an opportunity for bond complies with the Constitution. *Id.* at 531. However, as we discuss below, we read *Demore* as also recognizing that there are limits to this power. *Diop,* 656 F.3d at 221.
>
> 783 F.3d at 472-73 (internal citations omitted).

---

removal . . . ." 8 U.S.C. § 1252(a)(5). Thus, if and when Miller's order of removal becomes final "upon the earlier of—(i) a determination by the [BIA] affirming such order; or (ii) the expiration of the period in which [Miller] is permitted to seek review of such order by the [BIA]," 8 U.S.C. § 1101(a)(47)(B), he could challenge his removal order pursuant to the aggravated felony provision by filing a petition for review with the appropriate court of appeals. *Ortiz-Orona v. Hogsten*, No. 4:CV-07-1858, 2008 WL 80070, at *12 n.11 (M.D. Pa. Jan. 7, 2008).

One limit to the mandatory detention power under § 1226(c) recognized by the Third

Circuit is that "the statute authorizes only mandatory detention that is reasonable in length."

*Diop*, 656 F.3d at 235. Furthermore, "it is possible that a detention may be unreasonable even

though the Government has handled the removal case in a reasonable way." *Chavez-Alvarez*, 783

F.3d at 475. Specifically, the Third Circuit in *Chavez-Alvarez* held that in cases where a petitioner

brings a good faith challenge to his or her removal from the United States:

> [B]eginning sometime after the six-month timeframe considered by *Demore,* and
> certainly by the time [a petitioner] had been detained for one year, the burdens to
> [the petitioner]'s liberties outweigh[ ] any justification for using presumptions to
> detain him without bond to further the goals of the statute. We conclude that the
> underlying goals of the statute would not have been, and will not now be
> undermined by requiring the Government to produce individualized evidence
> that [the petitioner]'s continued detention was or is necessary.

> 783 F.3d at 478.

Thus, where a petitioner's detention extends beyond the six-month to one-year time frame

delineated in *Chavez-Alvarez*, the reviewing court should order an individualized bail hearing to

determine "whether detention is still necessary to fulfill the statute's purposes of ensuring that

an alien attends removal proceedings and that his release will not pose a danger to the

community." *Diop*, 656 F.3d at 231; *Chavez-Alvarez*, 783 F.3d at 475. Furthermore, at these

individualized bail hearings "the Government bears the burden of proving that continued

detention is necessary to fulfill the purposes of the detention statute." *Diop*, 656 F.3d at 233.

Applying the Third Circuit's established framework to the facts of this case, it is clear

that Miller's prolonged mandatory detention exceeds the one-year period at which point

detention is presumed excessive. *Chavez-Alvarez*, 783 F.3d at 478. Miller was taken into ICE

custody on August 18, 2014, and thus has now been detained for over 22 months. (Doc. 1, at 7;

Doc. 5-1, at 6-7). Respondent concedes that the length of Miller's detention has extended

beyond the point where mandatory detention becomes presumptively unreasonable under *Chavez-Alvarez*, but argues that Miller is not entitled to the presumption of unreasonableness because the length of his detention is directly attributable to Miller's own conduct. (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 13, at 15-16). Indeed, as Respondent points out, *Chavez-Alvarez* explicitly contemplates the possibility that a petitioner's bad faith may preclude a finding of unreasonable detention. (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 13, at 15); *Chavez-Alvarez, 783 F.3d at 476* ("Because we conclude that Chavez–Alvarez did not act in bad faith, we do not need to decide here whether an alien's delay tactics should preclude a bond hearing."). Accordingly, the Court must determine whether Miller has acted in bad faith to delay or stall his removal proceedings, and if so, whether the length of the delay attributable to Miller's bad faith is significant enough to sway the Court's analysis of whether a bond hearing should be ordered.

Respondent claims that Miller is not entitled to a bond hearing because he "put the immigration proceedings on hold" through his own "dilatoriness and fraudulent acts . . . ." (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 13, at 15). However, not all delays in removal proceedings attributable to the actions of a detainee are necessarily acts of bad faith. "Bad faith exists when a petitioner challenges aspects of the government's case that do not present bona fide or real issues, or are simply frivolous or meritless arguments." *Soriano v. Sabol*, No. CV 3:16-0271, 2016 WL 2347904, at *3 (M.D. Pa. May 3, 2016). Conversely, "[a]n alien cannot be held responsible for delays 'caused by his pursuit of bona fide legal challenges to his removal.'" *Rodriguez-Celaya v. Attorney Gen. of the U.S.*, No. 1:CV-14-0514, 2014 WL 3557133, at *4 (M.D. Pa. July 17, 2014) (quoting *Leslie v. Attorney General*, 678 F.3d 265, 271 (3d Cir. 2012)).

Here, a review of the history of Miller's removal proceedings reveals that only a portion of the delay can be attributed to his bad faith. Miller first challenged his removability on the ground that his Delaware felony theft conviction was not an aggravated felony for the purposes of § 1227(a)(2)(A)(iii). (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 13-1, at 19-30). A detainee's challenge to whether his state court conviction constitutes an aggravated felony "is a complex legal question," which "present[s] 'real issues' and [is] made in good faith." *Soriano, 2016 WL 2347904, at \*6.* Therefore, although unsuccessful, Miller's assertion that his conviction was not an aggravated felony was a bona fide challenge to his removal that should not count against him. In addition to affirming the immigration judge's finding that Miller had committed an aggravated felony, the BIA's January 12, 2015 opinion also remanded the case back to the immigration judge for further proceedings due to concerns that the immigration judge may have failed to advise Miller of other potential forms of relief that he could seek. (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 13-1, at 29-30 (citing 8 C.F.R. § 1240.11(c)(1)). In accordance with the BIA's remand, a master calendar hearing was set for March 5, 2015. (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 13, at 13; Doc. 13-1, at 37). Thus, as of the initial master calendar hearing date, Miller had already been detained for over six months and none of the detention period could be attributed to bad faith.

Respondent's strongest argument that Miller exhibited bad faith stems from the nine-month period that elapsed between the initially-scheduled calendar hearing date and an immigration judge's December 7, 2015 decision denying Miller's claim for withholding of removal. (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 13, at 13-16). During this time period, Miller requested multiple continuances, twice had counsel withdraw, and is alleged to have presented fraudulent evidence to the immigration judge in support of his request for

withholding of removal. (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 13, at 13-16). In contrast to a detainee's challenge to whether a state court conviction constitutes an aggravated felony, failed attempts to seek withholding of removal are considered bad faith delays to removal proceedings. *See Rodriguez-Celaya v. Attorney Gen. of the U.S.*, No. 1:CV-14-0514, 2014 WL 3557133, at *5 (M.D. Pa. July 17, 2014) ("In the court's view, the only period of delay that should count here against Petitioner is the three months he spent pursuing an unsuccessful attempt at withholding of removal."). After an immigration judge ordered Miller removed for a second time on December 7, 2015, Miller once again filed a timely appeal to the BIA. (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 13, at 15; Doc. 17, at 2). Nearly seven months have passed since the immigration judge ordered Miller removed, but there has been no final order of removal from the BIA to date.

Even if this Court assumes that the entirety of the nine-month period during which Miller unsuccessfully sought withholding of removal before an immigration judge should count against him, this leaves a period of approximately thirteen months on either side of that period where Miller has been detained due to delays that were not caused by his bad faith. *See Leslie v. Attorney Gen. of U.S.*, 678 F.3d 265, 271 (3d Cir. 2012) ("Although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take." (quoting *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003))). Given that periods of detention in excess of one year raise constitutional concerns, this Court recommends that Miller receive a bond hearing. *See Chavez-Alvarez*, 783 F.3d at 478.

The Court further notes that other considerations raised in *Chavez-Alvarez* also weigh in favor of granting Miller a bond hearing. First, Miller's removal proceedings are likely to continue for a significant amount of time; as the case will either be vacated and remanded back

to the immigration judge, or if the BIA affirms and the removal order becomes final, Miller will have a right to petition the Third Circuit for review. *See* 8 U.S.C. § 1252(a)(5). Next, the Court finds that Respondent will not be disadvantaged at a bond hearing should the government choose to argue that Miller poses a flight risk or a danger to the community, given the ample amount of time the government has had to assess Miller over the course of these proceedings.[4] *See Chavez-Alvarez*, 783 F.3d at 477. Lastly, the Court recognizes, as the Third Circuit has stated, that "we cannot ignore the conditions of confinement," and that "[a]s the length of the detention grows, the weight given to this aspect of [Miller's] detention increases." *Chavez-Alvarez*, 783 F.3d at 478.

This Court therefore concludes that Miller is entitled to an individualized bond hearing where the government will have the burden of demonstrating that continued detention is still necessary. Having reached this conclusion, the Court recognizes that an immigration judge can, and often should, make an initial bond determination. *Chavez-Alvarez*, 783 F.3d at 478 n.12; *see Leslie*, 865 F. Supp. 2d 627, 631 (M.D. Pa. 2012) (noting that district court permitted initial bail review to be conducted by an immigration judge, "[m]indful of the deference which should be accorded in the first instance to agency decision-making processes"). Federal courts frequently defer to immigration judges under these circumstances, as opposed to conducting their own bond hearings. *See, e.g.*, *Casas–Castrillon v. Dep't of Homeland Security,* 535 F.3d 942 (9th Cir. 2008); *Singh v. Sabol*, No. 1:14-CV-1927, 2015 WL 3519075, at *6 (M.D. Pa. June 4, 2015), *appeal dismissed*, (Sept. 9, 2015); *Wilks v. U.S. Dep't of Homeland Security,* No. 07–2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008). For these reasons, the Court recommends that this matter be

---

[4] Indeed, Respondent's allegation that Miller produced falsified documents in support of his withholding of removal claim may prove to be pertinent to a bond determination. (*Miller v. Sabol*, Case No. 3:15- CV-02229, Doc. 13, at 15-16).

referred to an immigration judge for the initial bail determination, at which time the government will bear the burden of proving that continued detention is necessary. However, to reconcile "the deference which should be accorded in the first instance to agency decision-making processes," *Leslie*, 865 F. Supp. 2d at 631, with the District Court's concurrent jurisdiction stemming from the responsibility to address federal habeas corpus petitions filed by immigration detainees, it is further recommended that the District Court retain the authority to conduct its own individual bond consideration, if necessary.

## III. RECOMMENDATION

Based on the foregoing, it is recommended that:

1. Petitioner's petition for writ of habeas corpus (Doc. 1) be **GRANTED IN PART** to the extent that Petitioner be afforded an individualized bond hearing.

2. Within a specified period following the adoption of this Report, an immigration judge shall afford the Petitioner an individualized bail hearing. At this hearing, the immigration judge must make an individualized inquiry into whether detention is still necessary for the purposes of ensuring that the Petitioner attends removal proceedings and that his release will not pose a danger to the community. *Chavez–Alvarez v. Warden York Cnty. Prison,* 783 F.3d 469, 475 (3d Cir. 2015). Further, the government bears the burden of presenting evidence at this hearing and proving that Petitioner's continued detention is necessary to fulfill the purposes of the detention statute. *Diop v. ICE/Homeland Sec.,* 656 F.3d 221, 233 (3d Cir. 2011).

3. The parties shall report to the District Court on the outcome of the individualized bail determination **no later than three (3) days** after the immigration judge's hearing.

4. If the immigration judge does not hold an individualized bond hearing consistent with the legal benchmarks outlined in this Report and Recommendation, the District Court will conduct its own bond determination, under the standards governing bail in habeas corpus proceedings, at a date and location to be determined.

Dated: July 5, 2016                                    BY THE COURT:


*s/ Karoline Mehalchick*
_____
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DALTON DONOVAN MILLER,
A # 043-721-663

                    Petitioner,

      v.

JEH CHARLES JOHNSON, Warden,

                    Respondent.

CIVIL ACTION NO. 3:14-CV-02263

(CAPUTO, J.)
(MEHALCHICK, M.J.)

**NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **July 5, 2016**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: July 5, 2016**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**